Opinion
 

 HASTINGS, J.
 

 Petitioners, Fairmont Insurance Company (Fairmont) and Transamerica Insurance Company (Transamerica) (collectively referred to as petitioners), seek to have us reverse an order granting summary adjudication of a cause of action for declaratory relief relating to their duty to defend. In connection with their request, we issued an alternative writ. After considering the matter, including real parties’ opposition to the petition, we now grant a writ of mandate commanding the trial court to vacate its order granting summary adjudication.
 

 Statement of Facts
 

 On January 15, 1989, Fairmont issued a workers’ compensation and employers’ liability insurance policy (the Policy) to Western Industrial Management Corporation (Western) effective January 15, 1989, to January 15, 1990.
 
 [1]
 

 The Fairmont policy provides two separate grants of coverage: (1) for “such benefits as are required by the Workers’ Compensation Laws of the State of California to any person entitled thereto” (workers’ compensation coverage) and (2) “employer’s liability” which pays “all sums, except for punitive or exemplary damages, which the Employer shall become legally obligated to pay to its employee . . . for . . . bodily injury resulting from accident, sickness or disease . . .” arising out of employment (employer’s liability).
 

 The Policy includes an amendment that bodily injury “does not include emotional distress, anxiety, discomfort, inconvenience, depression, dissatisfaction or shock to the nervous system,
 
 unless caused by either a manifest
 
 
 *1709
 

 physical injury or a disease
 
 with a physical dysfunction or condition resulting in treatment by a licensed physician and surgeon.” (Italics added.)
 

 Under item “VIII Discrimination,” the “Exclusions” portion of the Policy, no coverage exists “for any liability arising from any claim or action: (a) for wrongful termination brought by an employee or former employee; (b) for discrimination based upon sex . . . brought by any employee or former employee. . . .” This applies to both workers’ compensation and employer’s liability coverage. Also, under the employer’s liability portion, pursuant to the policy amendment the following is excluded: “(b) for any obligation for which the insured or any carrier as his insurer may be held liable under any workers’ compensation or occupational disease law, . . . ; (f) for bodily injury arising out of termination of employment; (g) for bodily injury arising out of the . . . harassment or humiliation of, or discrimination of any kind against any employee.”
 

 The Policy provides for defense of “claims or suits against the Employer for compensation or damages because of injuries insured against hereunder, and to pay all cost of such defense. . . .”
 

 On June 28, 1990, Susan Maurer (Maurer) filed a civil complaint against Western, Citizens Transportation Company (Citizens), Irven J. Francis (Francis) and Ronnie J. Goodin (Goodin) (collectively referred to as real parties in interest), in Los Angeles County Superior Court, which included causes of action for: (1) sex discrimination; (2) aiding and abetting sex discrimination; (3) wrongful termination; (4) violation of constitutional rights; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; and (7) unfair business practices (the civil action).
 

 The complaint alleges that Maurer was hired by Weyers & Son on January 16, 1989, to drive a truck and deliver paper to the Los Angeles Times (Times); that Weyers & Son was delivering the paper to the Times pursuant to a contract between Weyers & Son and Citizens; that on March 3, 1989, Maurer was placed on the payroll of Western but continued driving the truck and delivering the paper to the Times under the direct supervision of Weyers & Son; that Citizens, at the request of Francis and Goodin, requested Western to terminate Maurer because “she was a female”; and that on March 31, 1989, she was laid off allegedly due to lack of work.
 

 Maurer testified at her deposition that the wrongful termination resulted in stress which has caused her severe back pain and anxiety attacks. She indicated that the anxiety attacks are physically manifested by sweating, shakes, a feeling of weight on her chest, severe stomachaches, and infections
 
 *1710
 
 resulting in open sores on her body. She has been treated by a medical doctor for these problems.
 
 [2]
 

 Maurer also filed a workers’ compensation claim seeking compensation for emotional distress resulting from her March 31, 1989, termination of employment. Fairmont defended Western against the workers’ compensation claim filed by Maurer.
 

 Western tendered defense of the civil action to Fairmont. By letter dated December 27, 1990, the defense was denied. Western ultimately settled the civil claim, paying Maurer $380,000, and incurred attorney fees and costs for defending the matter in the amount of $227,571.40, of which petitioners reimbursed Western $34,813.13. This was apparently the amount incurred prior to the time that defense of the civil claim was denied.
 

 Real parties in interest then filed suit against petitioners, among others. In a second amended complaint, five causes of action are alleged against petitioners: the seventh cause of action sought a declaration that a duty to defend and indemnify real parties in interest existed for defense of the underlying civil suit; the eighth cause of action for breach of contract seeks damages for failure to defend and indemnify; the ninth cause of action seeks damages for tortious breach of the implied covenant of good faith and fair dealing resulting from a refusal to defend and indemnify; the tenth cause of action seeks damages for coverage on the theory that petitioners are barred from denying coverage by reason of promissory estoppel; and the eleventh cause of action seeks damages for coverage based upon the concept of waiver. Petitioners denied all of the allegations of the complaint, and raised 19 separate affirmative defenses.
 

 Western filed a motion for summary adjudication of issues as to the seventh and eighth causes of action seeking to adjudicate the following issues: “(1) that Fairmont owed Western a duty to defend the underlying action captioned
 
 Susan Maurer vs. Western . . .
 
 ; [ft] (2) that Fairmont breached its insurance contract with Western by refusing to provide a defense for Western in the underlying action . . . ; [1] (3) that Transamerica owed Western a duty to defend the underlying action . . . ; ffl (4) that
 
 *1711
 
 Transamerica breached its insurance contract with Western by refusing to provide a defense for Western in the underlying action. . . .”
 

 Western relied upon the recent case of
 
 Wong
 
 v.
 
 State Compensation Ins. Fund
 
 (1993) 12 Cal.App.4th 686 [16 Cal.Rptr.2d 1] for the proposition that because petitioners had potential liability for coverage under a workers’ compensation claim, they owed a duty to defend Western for the civil action. Western asserted that petitioners had breached the contract by failing to defend.
 

 Petitioners opposed the motion, contending that
 
 Wong
 
 v.
 
 State Compensation Ins. Fund, supra,
 
 12 Cal.App.4th 686, was not applicable to this situation because they had provided a defense to the workers’ compensation claim. They further contended that the exclusions relating to wrongful termination and for discrimination based upon sex also prevented coverage.
 

 Western replied to the opposition, asserting that petitioners had failed to “
 
 ‘conclusively
 
 eliminate a potential for liability’ ” once Western had established such potential, citing
 
 Montrose Chemical Corp.
 
 v.
 
 Superior Court
 
 (1993) 6 Cal.4th 287, 299 [24 Cal.Rptr.2d 467, 861 P.2d 1153], italics added. Western also cited the recent case of
 
 La Jolla Beach & Tennis Club, Inc.
 
 v.
 
 Industrial Indemnity Co.
 

 [3]
 

 ,
 

 *
 

 (Cal.App.).
 

 On December 17, 1993, the trial court granted summary adjudication on the seventh cause of action stating: “It is hereby ordered that Western’s motion for summary adjudication is granted as to the seventh cause of action for declaratory relief in the second amended complaint, [f] It is further ordered, adjudged and decreed that [petitioners] owed Western a duty to defend the underlying action captioned
 
 Susan Maurer
 
 v.
 
 Western Industrial Management Inc. . .
 
 .” The court denied summary adjudication of the eighth cause of action without prejudice on the ground that the moving party had failed to address the issue of damages and therefore summary adjudication would not resolve the entire cause of action.
 

 Petitioners sought a writ of mandate asserting that the trial court was wrong as a matter of law regarding the duty to defend. We issued an alternative writ because the issue is one of importance to the public and the law is unsettled in the area.
 

 In their return to the alternative writ, real parties in interest again argue that under the facts presented to the trial court, the terms of the policy, and
 
 *1712
 
 under the authority of
 
 Wong
 
 v.
 
 State Compensation Ins. Fund, supra,
 
 12 Cal.App.4th 686 coverage exists for a defense. However, they also present us with new facts relating to the injuries claimed by Maurer and address the issues of waiver, estoppel and unclean hands. None of these issues was raised in the trial court in connection with the motion for summary adjudication. There are separate causes of action alleged in the second amended complaint raising the claims of coverage by estoppel and waiver. Because these causes of action were not addressed in the trial court, we do not address them here. Further, we express no opinion as to the validity of either of these theories.
 
 [4]
 

 Discussion
 

 1.
 
 Was summary adjudication of the issue of duty appropriate?
 

 In 1991, section 437c of the Code of Civil Procedure was amended to provide that: “If it is contended that one or more causes of action within an action has no merit or that there is no defense thereto, or that there is no merit to an affirmative defense as to any cause of action, or both, or that there is no merit to a claim for damages, as specified in Section 3294 of the Civil Code, or that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs, any party may move for summary adjudication as to that cause or causes of action, that affirmative defense, that claim for damages, or that issue of duty.” (Code Civ. Proc., § 437c, subd. (f).) The intended effect of this amendment was noted in
 
 City of Emeryville
 
 v.
 
 Superior Court
 
 (1991) 2 Cal.App.4th 21 [2 Cal.Rptr.2d 826], at page 25: “ ‘It is also the intent of this legislation to stop the practice of adjudication of facts or adjudication of issues that do not completely dispose of a cause of action or a defense.’ ”
 

 Recently, in
 
 Regan Roofing Co.
 
 v.
 
 Superior Court
 
 (1994) 24 Cal.App.4th 425 [29 Cal.Rptr.2d 413], another district of this court addressed the issue of whether a determination relating to the issue of duty must completely dispose of a cause of action or an affirmative defense. In that case, an initial action for construction defects was brought against the developer of a condominium project, Pacific Scene. Pacific Scene filed a cross-complaint for breach of contract, implied indemnity, express indemnity, equitable indemnity, contribution and declaratory relief against a number of other contractors on the project, each of whom had agreed to a contractual
 
 *1713
 
 indemnity clause as part of its subcontract. Pacific Scene then moved for summary adjudication based on its cause of action for declaratory relief, seeking a declaration that the indemnity contracts entered into were type 1 indemnity contracts and that the subcontractors owed Pacific Scene a duty to defend. The motion was granted. The appellate court reversed, holding that it was improper for the trial court to utilize summary adjudication on the issue of duty to defend when other causes of action remained and such a declaration did not entirely dispose of a cause of action or an affirmative defense.
 
 [5]
 

 We do not think that the situation presented here calls for the same conclusion. The question of whether a duty exists under certain circumstances is generally a question of law.
 
 {Ann M.
 
 v.
 
 Pacific Plaza Shopping Center
 
 (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207].) This is particularly true in the context of insurance and the issue of duty to defend.
 
 {Montrose Chemical Corp.
 
 v.
 
 Superior Court, supra,
 
 6 Cal.4th at pp. 299-300.) It is reasonable to conclude that this is why the Legislature included duty as an issue to be addressed in a motion for summary adjudication. The language of the statute is clear and unequivocal, a plaintiff may seek a determination of whether a defendant or defendants owed a duty to the plaintiff. We do not find
 
 Regan Roofing Co.
 
 v.
 
 Superior Court, supra,
 
 to be controlling under the circumstances here presented.
 

 2.
 
 Does a duty to defend exist pursuant to the terms of the policy?
 

 The sole issue we address in this section is whether the court properly found that a duty to defend was established based upon the uncontradicted facts and the terms of the insurance policy. As previously indicated, we do not address whether waiver or estoppel are valid theories of recovery but leave that for further proceedings in the trial court.
 

 a.
 
 The law relating to summary judgment and construction of insurance contracts:
 

 Because this matter reaches us after summary adjudication, we review the motion
 
 de novo. {Krieger
 
 v.
 
 Nick Alexander Imports, Inc.
 
 (1991) 234 Cal.App.3d 205, 212, fn. 3 [285 Cal.Rptr. 717].) We review the facts
 
 *1714
 
 presented to the trial court and independently determine their effect as a matter of law.
 
 (Saldana
 
 v.
 
 Globe-Weis Systems Co.
 
 (1991) 233 Cal.App.3d 1505, 1514 [285 Cal.Rptr. 385];
 
 Stratton
 
 v.
 
 First Nat. Life Ins. Co.
 
 (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)
 

 A duty to defend exists if there is any potential for coverage under the Policy.
 
 (Montrose Chemical Corp.
 
 v.
 
 Superior Court, supra,
 
 6 Cal.4th at p. 295;
 
 Horace Mann Ins. Co.
 
 v.
 
 Barbara B.
 
 (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) However, “ ‘where there is no possibility of coverage, there is no duty to defend.’ ”
 
 (Fire Ins. Exchange
 
 v.
 
 Abbott
 
 (1988) 204 Cal.App.3d 1012, 1029 [251 Cal.Rptr. 620].)
 

 “ ‘The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. [Citations.]’ ”
 
 (Montrose Chemical Corp.
 
 v.
 
 Superior Court, supra,
 
 6 Cal.4th at p. 295.)
 

 In interpreting insurance contracts, terms used therein are interpreted in their “ordinary and popular sense” unless used by the parties in a technical sense or a special meaning is given them. If a meaning a layperson ascribes to contract language is not ambiguous, courts will apply that meaning.
 
 (AIU Ins. Co.
 
 v.
 
 Superior Court
 
 (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253];
 
 North Bay Schools Ins. Authority
 
 v.
 
 Industrial Indemnity Co.
 
 (1992) 6 Cal.App.4th 1741, 1745 [10 Cal.Rptr.2d 88].) We are well aware of the statement in a number of cases that any ambiguity will be resolved in favor of coverage. That approach was significantly modified in
 
 Bank of the West
 
 v.
 
 Superior Court
 
 (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545], and
 
 AIU Ins. Co.
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d at page 822. The present approach recognizes that “[w]hile insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.]”
 
 (Bank of the West
 
 v.
 
 Superior Court, supra,
 
 2 Cal.4th at p. 1264.) Moreover, the “ ‘principle of construction comes into play only if it is first determined that an ambiguity exists, which is also a question of law.’ [Citation.]”
 
 (Smyth
 
 v.
 
 USAA Property & Casualty Ins. Co.
 
 (1992) 5 Cal.App.4th 1470, 1474 [7 Cal.Rptr.2d 694].)
 

 A term is ambiguous if it is susceptible of two or more interpretations.
 
 (North Bay Schools Ins. Authority
 
 v.
 
 Industrial Indemnity Co., supra, 6
 
 Cal.App.4th at p. 1745.) However, coverage terms cannot be analyzed in a vacuum.
 
 (Blumberg
 
 v.
 
 Guarantee Ins. Co.
 
 (1987) 192 Cal.App.3d 1286,1294
 
 *1715
 
 [238 Cal.Rptr. 36].) The Policy must be construed in its entirety, with each clause interpreted in relation to the others contained therein.
 
 (Bank of the West
 
 v.
 
 Superior Court, supra,
 
 2 Cal.4th at p. 1265;
 
 Smyth
 
 v.
 
 USAA Property & Casually Ins. Co., supra,
 
 5 Cal.App.4th at p. 1474.)
 

 With the foregoing in mind, we now turn to the rules of construction and apply them to the terms of the Policy.
 

 b.
 
 The workers’ compensation exclusion:
 

 Interpreting the Policy as a whole, it is clear that where workers’ compensation coverage is afforded under the facts of a given case no other coverage exists.
 

 As previously indicated, the Policy has two separate grants of coverage— workers’ compensation and employer’s liability. The duty to defend in the instant policy applies to both coverages. However, there is a clear exclusion in the amendment relating to the employer’s liability portion of the Policy, excluding coverage “for any obligation for which the insured or any carrier as his insurer may be held liable under any workers’ compensation or occupational disease law, any unemployment compensation or disability benefits law, or under any similar law. . . .” This clearly indicates that where workers’ compensation liability exists, there is no coverage under the employer’s liability portion of the Policy, thereby affording only defense and indemnity for the workers’ compensation claim. A workers’ compensation claim was successfully made in this case and a defense was provided to Western for the claim.
 

 Real parties in interest rely heavily on
 
 Wong
 
 v.
 
 State Compensation Ins. Fund, supra,
 
 12 Cal.App.4th 686. They argue that
 
 Wong
 
 stands for the proposition that if coverage potentially exists for liability resulting from a workers’ compensation claim, then a duty to defend also exists in favor of the insured for a civil claim by a former employee alleging injuries from conditions at the workplace or for wrongful termination.
 

 We believe that
 
 Wong
 
 is distinguishable from the facts of this case. In
 
 Wong,
 
 the court stated: “It should also be noted that the defense clause in the workers’ compensation section of the policy does not clearly exclude the defense of a civil action based on injury coming within the exclusive jurisdiction of the workers’ compensation system.”
 
 (Wong
 
 v.
 
 State Compensation Ins. Fund, supra,
 
 12 Cal.App.4th at pp. 695-696.) As noted above, the Policy in question here clearly provides that when workers’ compensation applies, no other coverage exists, leaving only coverage for defense for the workers’ compensation claim.
 

 
 *1716
 
 c.
 
 The wrongful termination and sex discrimination exclusions:
 

 The undisputed facts presented in connection with the motion for summary adjudication indicate that Maurer filed a civil action against real parties in interest for injuries she claims to have suffered as a result of stress arising from her wrongful termination which was allegedly based upon her sex. Under section “VIII Discrimination,” the Policy excludes coverage “for any liability arising from any claim or action: (a) for wrongful termination brought by any employee or former employee. ...(b) for discrimination based upon sex. . . .” This language is clear and unambiguous. Based upon Maurer’s complaint and the injuries presented to the trial court, the court should have found that this exclusion precluded coverage for the claims made in the underlying action and, therefore, no duty to defend existed.
 

 Real parties in interest have apparently recognized the problem raised by this exclusion and, in their return to the alternative writ, have now apprised us of additional information relating to harassment that Maurer was subjected to while she was still on the job: “The source of Maurer’s emotional distress was not her termination alone. Instead she testified in her deposition in the underlying action that she suffered emotional distress as a result of rumors circulating about her romantic involvement. Maurer testified at length in her deposition that she was constantly criticized in front of her fellow employees, siblings and parents because of the rumors circulating concerning her flirtatious behavior and alleged illicit affair with a Times employee, Tony Rubio. She further testified that her fellow employees, parents and siblings were also apprised that these rumors could cause the loss of the Times account. Maurer initially testified at her deposition in the underlying action that she had been dating Times employee, Tony Ru-bio. . . . She then testified that she was informed that rumors were ‘circulating’ concerning her relationship with Mr. Rubio. . . . [S[] She also testified that as a result of the rumors she was sent to a meeting with Francis and Goodin and that Francis told her to keep to herself and to avoid ‘flirting’ with the Times employees because they ‘didn’t need any of that.’ . . . [j[] Maurer also testified that her former employer, Bobby Weyers of Weyers & Sons, came down to her truck to talk to her about putting an end to the rumors because Francis and Goodin were putting a lot of pressure on him due to the rumors. . . . Thus, Maurer’s claimed emotional distress in her sixth cause of action for negligent infliction of emotional distress was not based solely upon her allegedly wrongful termination, but based upon other conduct by real parties in interest, as well.”
 

 Even if this evidence had been presented to the trial court, it would not have created a potential for coverage because of our discussion in part 2.b. above.
 

 
 *1717
 
 Secondly, while real parties in interest claim that this falls within the concept of negligent infliction of emotional distress while at work, they proffer no explanation for it other than discrimination based on sex. Therefore, section VIII of the exclusion prevents coverage even though it occurred while she was still employed.
 

 Reading the Policy as a whole, and based upon the evidence presented by real parties in interest, there is no coverage for the claims that were made by Maurer. There could have been no reasonable expectation of coverage by the insured for the civil claim made. We conclude that the trial court erred in finding that a duty to defend existed under the terms of the Policy.
 

 Disposition
 

 The alternative writ is discharged. Let a peremptory writ issue ordering the trial court to vacate its order of December 17, 1993, granting summary adjudication of the seventh cause of action and finding that a duty to defend existed. Costs are awarded to petitioners.
 

 Woods (A. M.), P. J., and Vogel (C. S.), J., concurred.
 

 A petition for a rehearing was denied December 1, 1994, and the petition of real parties in interest for review by the Supreme Court was denied Jaunuary 25, 1995.
 

 [1]
 

 Transamerica apparently purchased the book of business which included the Fairmont policy, and Western claims that Transamerica is equally at fault with Fairmont.
 

 [2]
 

 These were the injuries presented in connection with the motion for summary adjudication. As indicated,
 
 post,
 
 part 2.c., real parties in interest have added additional claims of injury in this writ proceeding. In any event, we note that Maurer’s claims presented to the trial court all allegedly arose from the stress she claimed resulting from her layoff. This does not fall within the definition of bodily injury contained in the amendment which requires that bodily injury must result from a “manifest physical injury or a disease. . . .” We do not construe physical manifestations resulting from stress as falling within the term bodily injury as defined for the employer’s liability portion of the policy.
 

 [3]
 

 This case has since been accepted for review by the Supreme Court, January 27, 1994 (S036170).
 

 *
 

 Reporter’s Note: For Supreme Court opinion see 9 Cal.4th 27.
 

 [4]
 

 The defense of unclean hands is based upon the same factual foundation as the claims of estoppel and waiver. Without passing on the merits of either estoppel or waiver, we find that the defense of unclean hands to this writ proceeding does not prevent our review of the issues hereafter discussed.
 
 (Dierssen
 
 v.
 
 Civil Service Commission
 
 (1941) 43 Cal.App.2d 53, 57-58 [110 P.2d 513].)
 

 [5]
 

 The appellate court did recognize that summary adjudication would be appropriate in an insurance context, citing the cases of
 
 Montrose Chemical Corp.
 
 v.
 
 Superior Court, supra,
 
 6 Cal.4th 287 and
 
 State Farm Fire & Casualty Co.
 
 v.
 
 Eddy
 
 (1990) 218 Cal.App.3d 958 [267 Cal.Rptr. 379], with the understanding that this should result in conclusion of an entire cause of action. However, in each of those cases the only cause of action presented was for declaratory relief, while the underlying actions were still pending. Therefore, the parties had a continuing relationship which was affected by the declaration of rights.